# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDSTROM INDUSTRIES, INC.,**

                Plaintiff,

       v.                                     Case No. 06-C-964

**COMPANION LIFE INSURANCE COMPANY,**

                Defendant.

## DECISION AND ORDER

On January 24-25, 2006, Edstrom Industries, Inc. ("Edstrom") and Companion Life Insurance Company ("Companion") participated in an arbitration proceeding involving a dispute over health insurance coverage. The dispute concerned reimbursement for medical costs incurred by Edstrom in the amount of $890,078.53 for the care of Joseph Wisneski, the infant son of Edstrom employee David Wisneski. The issue was whether Companion was obligated to reimburse Edstrom for these costs under the stop loss policy Edstrom purchased from Companion. In a decision dated May 26, 2006, the arbitrator concluded that the stop loss policy did not cover the $890,078.53 medical costs. On August 25, 2006, Edstrom filed a motion in Milwaukee County Circuit Court to vacate the arbitrator's award. On September 12, 2006, Companion removed the state action to this court. This case was randomly assigned to this court and the parties have consented to the full jurisdiction of a magistrate judge.

## FACTUAL SUMMARY

Edstrom established a group health plan for its employees and their dependants. Under the plan, Edstrom itself pays covered medical benefits out of its operating revenues. (Tr. 146:1-10; 449:14-21.) In order to protect itself from catastrophic medical claims, Edstrom purchased stop-loss insurance that reimburses Edstrom for any covered medical claims of a plan participant that exceed $65,000 in medical benefits. (Tr. 146:4-18.) Edstrom purchased such a policy from Companion, with coverage beginning January 1, 2004. (Murray Aff. Ex. 6 at 1446.) According to the policy, Companion was to reimburse Edstrom for covered claims if they were incurred in 2003 or 2004 and if Edstrom paid them in 2004. (Id. at 1448.)

As part of the final underwriting process, Edstrom was required to submit a disclosure statement to Companion that included questions regarding individuals who were hospitalized, had neonatal disorders, or could reasonably be expected to incur in excess of $32,500 in medical expenses during 2004. (Murray Aff. Ex. 5; Tr. 592:8-594:10.) The parties agreed that any controversies arising from or relating to the stop-loss insurance policy would be resolved by arbitration. (Murray Aff. Ex. 6 at 1467.) They also agreed that the laws of Wisconsin would govern their contract. (Id. at 1453.)

Edstrom employee David Wisneski enrolled his infant son Joseph Wisneski in Edstrom's insurance plan on September 22, 2003. (Murray Aff. Ex. 3.) Joseph was born on August 22, 2003. (Tr. 77:1-2.) Shortly after his birth, Joseph was placed in intensive care. (Tr. 78:7-13.) When Joseph was two to three weeks old, he was diagnosed with vocal chord paralysis, requiring him to be provided with breathing and feeding tubes. (Tr. 77:3-78:6.) As a result of the cost of Joseph's medical care, in excess of $65,000, Edstrom sought reimbursement from Companion in the amount of $1,146,657. (Murray Aff. Ex. 30.)

In response to Edstrom's requests for reimbursement, Companion reviewed Joseph's diagnosis and treatment (Tr. 621:16-622:7.) Companion found that Edstrom had not mentioned Joseph on its disclosure form. (Murray Aff. Ex. 5.) Companion stated that Edstrom should have disclosed Joseph's medical condition during the final underwriting process. (Murray Aff. Ex. 39.) Companion relied on the following provision of the stop-loss insurance contract to deny, in part, reimbursement to Edstrom for Joseph's claims:

> The Company has relied upon the underwriting information provided by the Contractholder or the Contractholder's Agent, in the issuance of this Contract. Should subsequent information become known which, if known prior to the issuance of this Contract, would affect the rates, deductibles, terms or conditions for coverage hereunder, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing notice to the Contractholder.

(Murray Aff. Ex. 7 at 1464, § VI, ¶ 4.)

In reliance upon this contract provision, Companion refused to reimburse Edstrom for any claims it paid for treatment Joseph received in 2003. (Murray Aff. Ex. 36.) Companion also increased the specific deductible for Edstrom's claims resulting from Joseph's care from $65,000 to $450,000 for treatment received in 2004. (Id.) Companion ultimately reimbursed Edstrom for $256,578.51 of Joseph's medical costs incurred in 2004. (Murray Aff. Ex. 30.)

On February 15, 2005, Edstrom commenced an arbitration proceeding against Companion demanding payment of the $890,078.53 of its claims for Joseph's care that remained unreimbursed. (Murray Aff. Ex. 47 at 1.) In a decision dated May 26, 2006, the arbitrator concluded that, notwithstanding any requirement that Edstrom knew or should have known of Joseph's condition during the final underwriting process, the parties' contract gave Companion "the complete and unfettered right at its sole election when it became aware of Joseph's medical condition 'to revise the rates, deductibles, terms or conditions' by providing written notice to Edstrom." (Id. at 7.) The

arbitrator found that written notice from Companion's managing general underwriter (Montgomery Management), to Edstrom's third party administrator (CMS) was sufficient. (Id. at 6, 8-9.) The arbitrator granted Companion's summary judgment motion, denying Edstrom's claim. (Id. at 7.)

Now before this court is Edstrom's motion to vacate the arbitrator's award. Edstrom contends that the award must be vacated because the arbitrator interpreted the parties' policy in a manner that is contrary to Wisconsin law, and, in particular, Wis. Stat. § 631.11.

§ 631.11 states:

(b) *Misrepresentation or breach of affirmative warranty.* No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract constitutes grounds for recission of, or affects the insurer's obligations under the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:
    (1) The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.
    (2) The fact misrepresented or falsely warranted contributes to the loss.

§ 631.11(1)(b).

It is Edstrom's position that since the arbitrator interpreted the policy in a manner contrary to Wisconsin law, he exceeded his powers. (Edstrom Br. 15-17.) Edstrom submits that this court must vacate the award pursuant to Wis. Stat. § 788.10(1)(d), which requires the court to vacate an arbitrator's award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (Edstrom Br. 16-17.)

Companion responds that § 631.11 does not apply to stop-loss insurance, which is a policy for reinsurance, and reinsurance is excluded from coverage under the statute. In reply, Edstrom argues that stop-loss insurance is not reinsurance, and § 631.11 does apply. (Edstrom Br. 17.)

-4-

Case 2:06-cv-00964-AEG   Filed 04/20/07   Page 4 of 13   Document 20

Edstrom goes on to argue that since § 631.11 applies to stop-loss insurance, Companion had no legal right to deny or modify coverage for Joseph unless Edstrom knew or should have known of Joseph's medical condition during the final underwriting process. (Id. at 16.) In other words, the provision of the policy cited by the arbitrator is subject to the operation of § 631.11; as such, the arbitrator exceeded his authority by stating that Companion had "the complete and unfettered right at its sole election when it became aware of Joseph's medical condition 'to revise the rates, deductibles, terms or conditions' by providing written notice to Edstrom." (Edstrom Br. 19.)

Edstrom also contends that the arbitrator's interpretation of the contract's notice provision is grounds for vacating the award under § 788.10(1)(d). (Edstrom Br. 20-21.) The arbitrator found that, even though written notice of the policy changes came from a source other than Companion, this did not violate the purpose of the notice requirement. Since Edstrom received notice of the policy change, the arbitrator found that the statutory purpose was fulfilled. (Id.) Edstrom disagrees with the arbitrator and argues that by accepting the manner in which the notice of the policy change was given, the arbitrator exceeded his authority. In response, Companion contends that the arbitrator acted within his authority in regard to his interpretation of the contract's notice provision. (Companion Br. 20-21.)

## STANDARD FOR VACATING AN ARBITRATOR'S AWARD

Under § 788.10, the court must vacate an arbitrator's award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." § 788.10(1)(d). Arbitrators' awards are presumed to be valid, and courts depart from them only when the awards are proven invalid by clear and convincing evidence. Madison Teachers Inc. v. Madison Metro Sch. Dist., 2004 WI App 54, 271 Wis. 2d 697, 706, 678 N.W.2d 311, 315.

Case 2:06-cv-00964-AEG    Filed 04/20/07    Page 5 of 13    Document 20

The arbitrator's function is to interpret the parties' contract in order to resolve their contractual disputes. See Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n., 118 Wis. 2d 707, 713, 348 N.W.2d 175, 178 (1984). The court "must uphold the arbitrator's decision as long as it is within the bounds of the contract language, regardless of whether [the court] might have reached a different result under that language, and it does not break the law." Id.

An arbitrator's decision may not be rendered invalid due to "mere errors of fact or law, but only when perverse misconstruction or positive misconduct is plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." City of Madison v. Madison Prof'l Police Officers Ass'n, 144 Wis. 2d 576, 586, 425 N.W.2d 8, 10-11 (1988). Manifest disregard of the law cannot be established when substantial authority supports the arbitrator's assumption as to the law, whether or not the court agrees with the assumption. City of Madison v. Local 311, Int'l Ass'n. of Firefighters, 133 Wis. 2d. 186, 191, 394 N.W.2d 766, 769 (Ct. App. 1986). See Madison Landfills, Inc. v. Libby Landfill Negotiating Comm., 188 Wis. 2d 613, 633, 524 N.W.2d 883, 892 (1994). Furthermore, arbitrators are not required to state the reasons for their decisions. McKenzie v. Warmka, 81 Wis. 2d 591, 601, 260 N.W.2d 752, 757 (1978); City of Manitowoc v. Manitowoc Police Dep't, 70 Wis. 2d 1006, 1016, 236 N.W.2d 231, 237 (1975).

The court's role in reviewing an arbitrator's award is to act as a supervisor, ensuring that the parties get what they bargained for in agreeing to resolve their disputes by arbitration. City of Oshkosh v. Oshkosh Pub. Library Clerical and Maint. Employees Union Local 796-A, 99 Wis. 2d 95, 103, 299 N.W.2d 210, 215 (1980). When parties agree to arbitrate, they "bargain for the judgment of the arbitrator - correct or incorrect - whether that judgment is one of fact or law." Id. 99 Wis. 2d at 103, 299 N.W.2d at 215.

## ANALYSIS

As stated above, Edstrom's primary basis for seeking vacation of the award is that the contract of insurance violates Wis. Stat. § 631.11. The arbitrator does not specifically mention § 631.11 in his award. He does state that whether or not Edstrom knew or should have known about Joseph's medical problems during the final underwriting process, Companion had "the complete and unfettered right at its sole election when it became aware of Joseph's medical condition 'to revise the rates, deductibles, terms or conditions' by providing written notice to Edstrom." (Murray Aff. Ex. 47 at 7.) In this court's opinion, if § 631.11 does not apply, this interpretation is within the bounds of the contract language, and does not provide grounds for overturning the arbitrator's decision. See Nicolet, 118 Wis. 2d at 713, 348 N.W. 2d at 178.

In other words, only if § 631.11 applies to the contract can Edstrom make a persuasive argument that the arbitrator interpreted the parties' contract in a manner contrary to Wisconsin law. Since the parties agreed that Wisconsin law would govern their contract, if § 631.11 applies, then the arbitrator interpreted the contract in a manner contrary to § 631.11, thereby exceeding his authority in violation of § 788.10(1)(b), requiring this court to vacate his award. (Id. at 15-16.) In response, Companion contends that the stop-loss policy under consideration is reinsurance under Wisconsin law, and as such, is excluded from Chapter 631 coverage under Wis. Stat. § 631.01(2). (Companion Br. 15.) Section 631.01(2) sets forth the sections of Chapter 631 that do apply to reinsurance. Section 631.11 is not listed.

To resolve this dispute, it is necessary to analyze the term "reinsurance." To assist, the court turns to a recognized expert treatise in the area of insurance. *Appleman on Insurance Law and Practice 2d* states that "the term 'reinsurance' has been used by courts, attorneys, and

textwriters with so little discrimination that much confusion has arisen as to what the term actually connotes." 14-102 *Appleman on Insurance 2d* § 102.1 (1999).

In Ott v. All-Star Ins., 99 Wis. 2d 635, 642, 299 N.W.2d 839, 843 (1981), the Wisconsin Supreme Court echoed that statement and noted that the court had adopted the definition of reinsurance set forth in *Appleman*. Wisconsin case law defines reinsurance as "a contract whereby one insurer for a consideration contracts with another to indemnify it against loss or liability by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person." Ott, 99 Wis. 2d at 642, 299 N.W.2d at 843; Master Plumbers Ltd. Mut. Liability Co. v. Cormany & Baird, Inc., 79 Wis. 2d 308, 310, 255 N.W.2d 533, 534 (1977); Franklin Mut. Ins. Co. v. Meeme Town Mut. Fire Ins. Co., 68 Wis. 2d 179, 228, N.W.2d 165, 166 (1975). In reinsurance, the reinsurer is liable only to the reinsured, while the reinsured maintains all liability to and contact with the original insured. 1-2 *Appleman on Insurance 2d* § 2.15 (1996).

Furthering the confusion surrounding the determination of what reinsurance is and is not, are multiple uses of the term "excess insurance." *Appleman* defines excess insurance as insurance a policyholder purchases to protect itself beyond the limit of its primary insurance policy. See 23-145 *Appleman on Insurance 2d* § 145.1 (2001). The other usage of the term excess denotes a form of reinsurance in which the reinsurer assumes the primary insurer's risk above a certain stated limit. Ott, 99 Wis.2d at 643, 299 N.W.2d at 843; 1-2 *Appleman on Insurance 2d* § 2.15 (1996). As opposed to the excess form, reinsurance can also take the pro rata form, whereby the reinsurer and the primary insurer share the risks and premiums in fixed proportions. Ott, 99 Wis.2d at 643, 299 N.W.2d at 843. Therefore, it seems clear that if a primary insurance company purchased a policy of insurance from a secondary insurance company to cover a risk over and above a certain amount,

this would be considered purchasing a reinsurance policy. But what if the "primary coverage" is provided by the employer itself, i.e. self-insurance, as Edstrom did: is this a reinsurance situation?

According to *Appleman*, reinsurance is often an important component of self insurance programs. 14-102 *Appleman on Insurance 2d* § 102.7 (1999). Reinsurance can be useful in self insurance programs for reasons similar to those prompting the use of reinsurance in the insurance market generally. Id. These include allowing the self insurance program to limit its risks and to establish larger limits than it could without reinsurance protection. Id.

Due to the widespread imprecise use of the term "reinsurance" and related terms, this court declines to rely on the terminology used by the Wisconsin Court of Appeals in Rockline, Inc. v. Wis. Physicians Serv. Ins., 175 Wis. 2d 583, 596, 499 N.W.2d 292, 298 (Ct. App. 1993), the only Wisconsin case the parties cite in their attempts to determine the nature of the policy at issue in this case. The court is especially reluctant to rely on the terminology used in Rockline because the identity of the policy in that case as insurance or reinsurance was not at issue.

At issue in Rockline was contract interpretation determining whether a stop-loss policy covered claims made after the company holding the policy terminated it. Rockline, 175 Wis. 2d at 590, 499 N.W.2d at 295. The parties in this case center their arguments around one line from Rockline, "The stop-loss policy in question is an excess insurance policy, not a primary insurance policy." 175 Wis. 2d at 596, 499 N.W.2d at 298. This sentence came as the Rockline court was determining the application of Wis. Stat. § 631.81 (notice and proof of loss) to the stop-loss policy. Id. Given the imprecise use of terminology relating to excess insurance and reinsurance, as well as the fact that the policy's identity as insurance or reinsurance was not at the center of the case, it is

unclear whether the court considered the policy at issue in Rockline excess insurance purchased by an original insured or the excess form of reinsurance.

Further, the parties in this case seem to misinterpret the Rockline court's consideration of the application of § 631.81 to the policy in that case. In their respective briefs, Edstrom and Companion discuss at length the topic of whether a legislative amendment to § 631.01(2) does or does not overrule what the parties characterize as a Rockline holding that a stop-loss policy protecting an employer's self-insured health plan is excess insurance. However, this court is unable to locate the amendment to which the parties refer, as the parties failed to cite to any amending act. The court has observed that none of the legislative amendments to § 631.01 has affected the reinsurance provisions of § 631.01(2), which is exactly the same in its current form as it was when first enacted. See Wis. Act 375 § 41 (1975). Since 1975, by virtue of mention in § 631.01(2), § 631.81 has remained applicable to insurance and reinsurance policies alike. Id.

In the absence of clearly applicable Wisconsin case law determining the nature of a stop-loss policy like the one at issue in this case, this court has concluded that the policy at issue here is the excess form of reinsurance. Edstrom contracted with Companion to limit the risk Edstrom assumed under contract with its employers to serve as the insurer of the individuals participating in Edstrom's employee health benefits plan. See Ott, 99 Wis. 2d at 642-643, 299 N.W.2d at 843; Master Plumbers Ltd., 79 Wis. 2d at 310, 255 N.W.2d at 534; Franklin Mut. Ins. Co., 68 Wis. 2d at 181, 228 N.W.2d at 166.

This policy is not pure excess insurance, which is additional protection an insured purchases to protect itself above the limit of its primary policy. See 1-2 *Appleman on Insurance* § 2.16 (1996). Instead, Companion's liability is solely to Edstrom, while Edstrom retains all liability to

-10-

and contact with the original insureds - the participants in Edstom's employee health benefits program. See 1-2 *Appleman on Insurance 2d* § 2.15 (1996). This is a situation where Edstrom has incorporated reinsurance into its self insurance program to enable it to place a ceiling on its risk and to provide higher coverage limits than it otherwise could have. See Ott, 99 Wis. 2d at 642-643, 299 N.W.2d at 843; 14-102 *Appleman on Insurance 2d* § 102.7 (1999). Pursuant to the policy here, Companion only becomes liable to Edstrom when Edstrom's losses reach the stated deductible for the individual insured, thereby taking the excess form of reinsurance as opposed to the pro rata form. See Ott, 99 Wis. 2d at 643, 299 N.W.2d at 843; 1-2 *Appleman on Insurance 2d* § 2.15 (1996). Because Wis. Stat. § 631.11 is inapplicable to the reinsurance policy at issue in this case and the arbitrator's decision is within the bounds of the contract language, the arbitrator's award stands. See Nicolet, 118 Wis. 2d at 713, 348 N.W. 2d at 178.

Edstrom's second argument for vacating the arbitrator's award is that the arbitrator exceeded his authority by failing to abide strictly by the terms of the parties' policy. (Edstrom Br. 20-21.) Edstrom alleges that this violation came in the manner the arbitrator disposed of Edstrom's argument that it did not receive proper notice of Companion's revision of the parties' policy. Id.

The contract provided that "the Company will have the right to revise the rates, deductibles, terms or conditions [of the Policy]...by providing written notice to the Contractholder." (Murray Aff. Ex. 6 at 1464 § VI ¶ 4.) The Policy defined the "Company" as Companion and the "Contractholder" as Edstrom. (Id. at 1453-1454.) The Policy provides that notice to Third Party administrator CMS can be considered notice to Edstrom. (Id. at 1465, § VI ¶ 10.) However, there is no provision stating that notice from Companion's general underwriter Montgomery may be

considered notice from Companion. The only written notice of the policy change provided at the hearing was a notice from Montgomery, not Companion. (Murray Aff. Ex. 36.)

The arbitrator found that although notice came from Montgomery rather than from Companion, the purpose of the provision was to ensure that Edstrom received notice of the policy change. (Murray Aff. Ex. 47 at 8-9.) The arbitrator found that this purpose was fulfilled. (Id.) Edstrom argues that by allowing notice from Montgomery to serve as sufficient notice of the policy change, the arbitrator exceeded his authority in violation of § 788.10(1)(d), requiring this court to vacate his award. (Edstrom Br. 21.)

It is the arbitrator's function to interpret the parties' contract in order to resolve their contractual disputes. See Nicolet High Sch. Dist., 118 Wis. 2d at 713, 348 N.W.2d at 178. When parties agree to arbitrate, they "bargain for the judgment of the arbitrator - correct or incorrect - whether that judgment is one of fact or law." Oshkosh Public Library, 99 Wis. 2d at 103, 299 N.W.2d at 215. This court "must uphold the arbitrator's decision as long as it is within the bounds of the contract language, regardless of whether [the court] might have reached a different result under that language, and it does not break the law." Nicolet High Sch. Dist., 118 Wis. 2d at 713, 348 N.W.2d at 178..

In concluding that notice from Montgomery Management satisfied the purpose of the notice provision in ensuring that Edstrom received notice of any changes in the policy, the arbitrator properly exercised his duty as interpreter of the parties' contract. It is not for this court to determine whether the arbitrator was correct or incorrect in interpreting the contract's notice provision. The parties agreed to arbitrate, and in doing so they bargained for the judgment of the

-12-

arbitrator. The arbitrator's interpretation of the notice provision is not outside the bounds of the contract language, and this court must therefore affirm.

**IT IS THEREFORE ORDERED** that Edstrom Industries, Inc.'s motion to vacate the arbitration award is **denied**. The Clerk of Court shall enter judgment disposing of this action.

SO ORDERED.

Dated at Milwaukee, Wisconsin this 20th day of April, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge

-13-

Case 2:06-cv-00964-AEG   Filed 04/20/07   Page 13 of 13   Document 20